IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON


SOREN A. STIEHL,                          Case No. 1:13-cv-00237-AA

         Plaintiff,                       OPINION AND ORDER

    v.

COMMISSIONER OF SOCIAL
SECURITY,

         Defendant.
_____

Tim Wilborn
Wilborn Law Office, P.C.
P.O. Box 370578
Las Vegas, Nevada 89137
     Attorney for plaintiff

S. Amanda Marshall
United States Attorney
Ronald K. Silver
Assistant United States Attorney
1000 S.W. Third Avenue, Suite 600
Portland, Oregon 97204

Lisa Goldoftas
Special Assistant U.S. Attorney
Social Security Administration
701 Fifth Avenue, Suite 2900 M/S 221
Seattle, Washington 98104
     Attorneys for defendant


Page 1 - OPINION AND ORDER

AIKEN, Chief Judge:

Plaintiff Soren Stiehl brings this action pursuant to the Social Security Act ("Act") to obtain judicial review of a final decision of the Commissioner of Social Security ("Commissioner"). The Commissioner denied plaintiff's application for supplemental security income ("SSI") under the Act. For the reasons set forth below, the Commissioner's decision is affirmed and this case is dismissed.

## PROCEDURAL BACKGROUND

On February 11, 2009, plaintiff applied for SSI. Tr. 119-21. His application was denied initially and upon reconsideration. Tr. 65-68, 71-72. On June 23, 2011, a hearing was held before an Administrative Law Judge ("ALJ"), wherein plaintiff was represented by counsel and testified. Tr. 23-46. Plaintiff's mother and a vocational expert ("VE") also testified. Id. On July 25, 2011, the ALJ issued a decision finding plaintiff not disabled. Tr. 49-60. On December 7, 2012, the Appeals Council denied plaintiff's request for review. Tr. 1-3. Subsequently, plaintiff filed a complaint in this Court.

## STATEMENT OF FACTS

Born on May 23, 1967, plaintiff was 41 years old on the alleged onset date of disability and 43 years old at the time of the hearing. Tr. 23, 119. Plaintiff graduated from high school. Tr. 27, 59. He worked previously as a cleaner, presorter and tally

person; he also changed oil at a car service business. Tr. 31, 41-42, 166. Plaintiff alleges disability as of February 1, 2009, based on a combination of mental impairments, including anxiety disorder, post-traumatic stress disorder ("PTSD"), attention deficit hyperactivity disorder ("ADHD"), personality disorder and cognitive disorder. Pl.'s Opening Br. 2.

## STANDARD OF REVIEW

The court must affirm the Commissioner's decision if it is based on proper legal standards and the findings are supported by substantial evidence in the record. Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989). Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consol. Edison Co. v. N.L.R.B., 305 U.S. 197, 229 (1938)). The court must weigh "both the evidence that supports and detracts from the [Commissioner's] conclusions." Martinez v. Heckler, 807 F.2d 771, 772 (9th Cir. 1986). Variable interpretations of the evidence are insignificant if the Commissioner's interpretation is rational. See Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005).

The initial burden of proof rests upon the claimant to establish disability. Howard v. Heckler, 782 F.2d 1484, 1486 (9th Cir. 1986). To meet this burden, the claimant must demonstrate an "inability to engage in any substantial gainful activity by reason

of any medically determinable physical or mental impairment which can be expected . . . to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).

## SEQUENTIAL DISABILITY EVALUATION

The Commissioner has established a five-step sequential process for determining whether a person is disabled. Bowen v. Yuckert, 482 U.S. 137, 140 (1987); 20 C.F.R. § 416.920. First, the Commissioner evaluates whether a claimant is engaged in "substantial gainful activity." Yuckert, 482 U.S. at 140; 20 C.F.R. § 416.920(b). If so, the claimant is not disabled.

At step two, the Commissioner determines whether the claimant has a "medically severe impairment or combination of impairments." Yuckert, 482 U.S. at 140-41; 20 C.F.R. § 416.920(c). If the claimant does not have a severe impairment, he is not disabled.

At step three, the Commissioner resolves whether the claimant's impairments, either singly or in combination, meet or equal "one of a number of listed impairments that the [Commissioner] acknowledges are so severe as to preclude substantial gainful activity." Yuckert, 482 U.S. at 141; 20 C.F.R. § 416.920(d). If so, the claimant is presumptively disabled; if not, the Commissioner proceeds to step four. Yuckert, 482 U.S. at 141.

At step four, the Commissioner determines whether the claimant can perform "past relevant work." 20 C.F.R. § 416.920(e). If the

Page 4 - OPINION AND ORDER

claimant can work, he is not disabled; if he cannot perform his past relevant work, the process moves to step five and the burden shifts to the Commissioner.

At step five, the Commissioner must establish that the claimant can perform other work that exists in significant numbers in the national economy. Yuckert, 482 U.S. at 142; 20 C.F.R. § 416.920(f), (g). If the Commissioner meets this burden, the claimant is not disabled. 20 C.F.R. § 416.966.

## THE ALJ'S FINDINGS

At step one of the five step sequential evaluation process outlined above, the ALJ found plaintiff had not engaged in substantial gainful activity since the alleged onset date. Tr. 54. At step two, the ALJ determined plaintiff had the following severe impairments: generalized anxiety disorder/PTSD, personality disorder, substance abuse/dependence, ADHD and cognitive disorder. Id.

At step three, the ALJ found plaintiff's impairments did not meet or medically equal the requirements of a listed impairment. Tr. 54. Because plaintiff was not presumptively disabled at step three, the ALJ continued to evaluate how plaintiff's impairments effected his ability to work. The ALJ found that plaintiff had the residual functional capacity ("RFC") to perform a full range of work at all exertional levels, but with nonexertional limitations to "unskilled work with brief and superficial contact with the

public." Tr. 57.

At step four, the ALJ found plaintiff had no past relevant work. Tr. 59. At step five, the ALJ determined that jobs existed in significant numbers in the national and local economy that plaintiff could perform despite his impairments, such as hand packer, hand assembler and hand sorter. Tr. 59-60. As such, the ALJ concluded that plaintiff was not disabled under the Act. Tr. 60.

## DISCUSSION

Plaintiff argues that the ALJ erred by: (1) rejecting his testimony; (2) failing to afford full weight to the opinion of Katherine Greene, Psy.D.; (3) discrediting lay witness testimony; (4) improperly determining the RFC; (5) failing to find him presumptively disabled at step three under listing 12.06; and (6) failing to support the step five finding with substantial evidence.

I. Plaintiff's Credibility

Plaintiff asserts that the ALJ improperly rejected his subjective symptom testimony. When a claimant has medically documented impairments that could reasonably be expected to produce some degree of the symptoms complained of, and the record contains no affirmative evidence of malingering, "the ALJ can reject the claimant's testimony about the severity of . . . symptoms only by offering specific, clear and convincing reasons for doing so." Smolen v. Chater, 80 F.3d 1273, 1281 (9th Cir. 1996)(internal citation omitted). A general assertion that the claimant is not

Page 6 -OPINION AND ORDER

credible is insufficient; the ALJ must "state which . . . testimony is not credible and what evidence suggests the complaints are not credible." Dodrill v. Shalala, 12 F.3d 915, 918 (9th Cir. 1993). The reasons proffered must be "sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony." Orteza v. Shalala, 50 F.3d 748, 750. (9th Cir. 1995) (internal citation omitted). If the "ALJ's credibility finding is supported by substantial evidence in the record, [the court] may not engage in second-guessing." Thomas v. Barnhart, 278 F.3d 947, 959 (9th Cir. 2002) (internal citation omitted).

At the hearing, plaintiff testified that it takes him several hours to get ready in the morning because he becomes overwhelmed and falls into a "spiral of anxiety" that transitions into depression. Tr. 28. He also testified that he was forced to withdraw from community college because he felt too overwhelmed. Tr. 30. He asserted that anxiety makes his asthma worse, such that when he wakes up in the morning and is "supposed to be in the shower, I'm like on my hands and knees on the floor somewhere, trying to just get my breath, get my focus, get myself to relax, breathing." Tr. 33. Plaintiff admitted to smoking marijuana the day before the hearing but stated that he has been trying to reduce his use. Id. Additionally, plaintiff stated that he rides his bicycle "everywhere," including to his appointments. Tr. 31.

After summarizing plaintiff's testimony, the ALJ found that plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms are not credible" due to his history of "irregular" mental health treatment. Tr. 58.

Failure to seek or follow medical treatment is a clear and convincing reason to reject a claimant's subjective statements. Burch, 400 F.3d at 681. Nevertheless, before drawing a negative inference from a claimant's failure to seek or follow treatment, the ALJ must consider "any explanations that the individual may provide, or other information in the case record, that may explain infrequent or irregular medical visits." SSR 96-7p, available at 1996 WL 374186. Here, although the ALJ did not extensively analyze plaintiff's credibility, he adequately provided a clear and convincing reason supported by substantial evidence, for rejecting plaintiff's hearing testimony.

The record reveals that plaintiff did not seek regular treatment for either his mental impairments or substance abuse issues, or follow his doctors' recommendations. Notably, despite plaintiff's assertion of disabling mental conditions, he sought no longitudinal psychological treatment. See, e.g., 224-34, 240-44, 250-57, 269-72, 296-98. In fact, the record before the Court contains no evidence reflecting that plaintiff received any regular

Page 8 - OPINION AND ORDER

counseling during the relevant time period. Further, he repeatedly refused mental health services and prescriptions to treat his psychological impairments. See, e.g., Tr. 240, 253, 289, 296-97. Medical records also show that plaintiff failed to take his asthma medication on a regular basis. Tr. 253. As the ALJ reasonably determined, this failure to seek psychological treatment or follow his doctors' orders belies plaintiff's hearing statements that anxiety rendered him unable to work.[1]

The Court acknowledges plaintiff's argument that he sought mental health treatment irregularly due to "poverty, frequent periods of homelessness, periods of incarceration and inability to afford prescribed medication." Pl.'s Opening Br. 17. These reasons, however, are not reflected in the record itself. For instance, in refusing medications or services, plaintiff never indicated that it was due to lack of resources. See Tr. 253, 296-97. The record contains several treatment notes for plaintiff's various temporary

---

[1] While not dispositive, the Court notes that there are repeated references in the record to plaintiff's issues with alcohol and marijuana. For instance, Dr. Thomas Shields, Ph.D., found plaintiff to have a "notable history of alcohol dependence spanning between age 19 and March of this year (2009)." Tr. 259. Another medical provider reported that plaintiff's "anxiety is secondary to his alcoholism and homelessness" and that it was "unclear if his anxiety is independent of his alcohol use." Tr. 244. Plaintiff contends that he has not had a drink since March 2009. Tr. 259. Nonetheless, the fact remains that he continues to smoke marijuana and abused alcohol throughout the majority of the adjudication period, making it difficult to determine whether his mental impairments would be severe in the absence of his substance abuse issues.

physical impairments, indicating he was able to obtain services when he wanted or believed he needed them. See Tr. 158-62, 224-34. The record contains no evidence that plaintiff looked into no-cost or low-cost medical options.

Thus, the ALJ provided clear and convincing reasons, supported by substantial evidence, for rejecting plaintiff's subjective symptom statements. The ALJ's credibility finding is affirmed.

II. Medical Opinion Evidence

Plaintiff argues that the ALJ erred by rejecting the opinion of Dr. Greene. There are three types of medical opinions in social security cases: those from treating, examining, and non-examining doctors. Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1995). To reject the uncontroverted opinion of a treating or examining doctor, the ALJ must present clear and convincing reasons for doing so. Bayliss v. Barnhart, 427 F.3d 1211, 1216 (9th Cir. 2005) (citing Lester, 81 F.3d at 830-31). If a treating or examining doctor's opinion is contradicted by another doctor's opinion, it may be rejected by specific and legitimate reasons. Id.

In December 2010 and January 2011, Dr. Greene performed a neuropsychological evaluation on plaintiff. Tr. 302-09. Dr. Greene's assessment was based in plaintiff's self-reports, an interview with his mother, and the results from psychological assessment tests. Tr. 302. The doctor diagnosed plaintiff with cognitive disorder, anxiety disorder, ADHD, PTSD, and cannabis

dependence in partial remission, and assigned him a GAF score of 60, indicating moderate impairment. Tr. 307; see also Walton v. Colvin, 2013 WL 2659658, *13 (D. Or. June 10, 2013) ("a GAF score of 60 . . . corresponds to 'moderate difficulty in social [and] occupational functioning (e.g., few friends, conflicts with peers or co-workers)'") (quoting American Psychiatric Association: Diagnostic and Statistical Manual of Mental Disorders 34 (4th ed. 2000, text revision)).

In June 2011, Dr. Greene completed a check-the-box form prepared by plaintiff's counsel. Tr. 311-314. Dr. Greene indicated that plaintiff had marked limitations in concentration, persistence or pace, maintaining social functioning and activities of daily living. Tr. 313; see also Tr. 311-12. Dr. Greene also reported that, although she never treated plaintiff and had not examined his medical file, he suffered four or more episodes of decompensation. Tr. 314; see also Tr. 316.

The ALJ afforded "no weight" to Dr. Greene's June 2011 report because her "conclusions are not supported by her own findings." Tr. 58. The ALJ noted that Dr. Greene's December 2010 and January 2011 assessment revealed only moderate impairments. Id. In addition, the ALJ discredited Dr. Greene's June 2011 opinion because "the doctor did not describe the four or more incidents of decompensation she asserts [plaintiff] suffered in the last year." Id.

Page 11 - OPINION AND ORDER

An ALJ "need not accept the opinion of . . . a treating physician, if that opinion is brief, conclusory, and inadequately supported by clinical findings." Thomas, 278 F.3d at 957. An ALJ may also "permissibly reject . . . check-off reports that [do] not contain any explanation of the bases of their conclusions." Crane v. Shalala, 76 F.3d 251, 253 (9th Cir. 1996); see also Holohan v. Massanari, 246 F.3d 1195, 1202 (9th Cir. 2001) ("the regulations give more weight to opinions that are explained than to those that are not").

Here, Dr. Greene's June 2011 check-off opinion is brief, conclusory, and not accompanied by reference to any objective findings. Tr. 311-314. In fact, the are no narrative descriptions whatsoever on this questionnaire. Id. As the ALJ found, Dr. Greene's opinion in support of plaintiff's disabled status contradicts her own prior assessment. Compare id., with Tr. 302-09. Specifically, Dr. Greene opined that plaintiff was moderately impaired in December 2010 and January 2011, but in June 2011, without reviewing any additional medical evidence or re-examining plaintiff, she reported that he was markedly limited. Moreover, concerning plaintiff's episodes of decompensation, Dr. Greene clarified, via a letter dated several months after the ALJ's decision, that her opinion was based on plaintiff's self-reports.[2]

---

[2] The Court acknowledges that, in her October 2011 letter, Dr. Greene also indicated that the GAF score assessed in December 2010 and January 2011 was not inherently inconsistent with her

Tr. 316; see also Andrews v. Shalala, 53 F.3d 1035, 1043 (9th Cir. 1995) ("[a]n opinion of disability premised to a large extent upon the claimant's own accounts of his symptoms and limitations may be disregarded, once those complaints have themselves been properly discounted"). Therefore, the ALJ's reasons for assigning no weight to Dr. Greene's opinion were both legally sufficient and supported by substantial evidence. Consequently, the ALJ's decision is affirmed as to this issue.

### III. Lay Witness Testimony

Plaintiff contends that the ALJ erred by improperly rejecting the lay witness testimony of his mother, Adrienne Fitzgerald. Lay testimony regarding a claimant's symptoms or how an impairment affects the ability to work is competent evidence that an ALJ must take into account. Molina v. Astrue, 674 F.3d 1104, 1114 (9th Cir. 2012) (citation omitted). The ALJ must provide "reasons germane to each witness" in order to reject such testimony. Id.

At the hearing, Ms. Fitzgerald testified about plaintiff's obsessive behaviors and unusual tendencies, such a collecting engine parts on the floor of his old apartment. Tr. 37-38. She also testified about plaintiff's inappropriate behavior in a job interview and the effect of stress on plaintiff's attempts to

---

June 2011 report. Tr. 316. The ALJ did not have access to this information at the time of his decision. Regardless, this evidence was capable of more than one rationale interpretation and must be upheld. Batson v. Comm'r of Soc. Sec. Admin., 359 F.3d 1190, 1198 (9th Cir. 2004).

attend community college. Tr. 39-42. Ms. Fitzgerald stated that plaintiff was let go from his last job in a body shop because he "couldn't get along" with the owner of the business. Tr. 41-42. She concluded that plaintiff "doesn't seem to have a good handle on following directions, getting along with people." Tr. 40.

The ALJ found that Ms. Fitzgerald's hearing testimony, while consistent with her earlier statements, was contradicted by the medical evidence of record. Tr. 58. Additionally, the ALJ noted that Ms. Fitzgerald "is very concerned about [plaintiff] and seeks to assist him as much as she can," and considered her statements "in that light." Id. Inconsistency with the medical evidence is an acceptable reason for discrediting lay witness testimony. Bayliss, 427 F.3d at 1218. Further, an ALJ may permissibly consider the close relationship between a lay witness and a claimant.[3] Greger v. Barnhart, 464 F.3d 968, 972 (9th Cir. 2006).

With the exception of Dr. Greene, all of the medical opinion evidence reflects that plaintiff is capable of performing work consistent with the RFC. See Tr. 258-64, 273-89, 299. Even Dr. Greene indicated in her January 2011 report that plaintiff was only

---

[3] Plaintiff argues that "it is the very nature of lay witness testimony for the witness to have a personal relationship with the claimant," such that the ALJ erred in relying on plaintiff's close relationship with his mother to discredit her testimony. Pl.'s Reply Br. 7. This argument overstates the ALJ's reasoning. Here, the ALJ simply considered the relationship between the lay witness and plaintiff; it was not the dispositive reason for discrediting Ms. Fitzgerald's third-party statements.

mildly impaired regarding attention and concentration to a single task. Tr. 306. As the ALJ reasonably determined, this evidence is inconsistent with Mr. Fitzgerald's hearing testimony. Therefore, the ALJ properly considered Ms. Fitzgerald's testimony and provided adequate reasons for assigning it little weight.

IV. The ALJ's RFC Assessment

Plaintiff challenges the ALJ's RFC determination as follows: (1) the ALJ failed to assess a separate mental RFC; and (2) his moderate impairments in concentration, persistence or pace and in maintaining social function were not accounted for. The RFC is the maximum that a claimant can do despite his limitations. 20 C.F.R. § 416.945(a). In determining the RFC, the ALJ must consider restrictions imposed by all of a claimant's mental and physical impairments, even those that are not severe, and evaluate the relevant medical and other evidence, including the claimant's testimony. SSR 96-8p, available at 1996 WL 374184. Only limitations supported by substantial evidence must be incorporated into the RFC and, by extension, the dispositive hypothetical question posed to the VE. Osenbrock v. Apfel, 240 F.3d 1157, 1163-65 (9th Cir. 2001).

A. Mental RFC

The ALJ considered all of plaintiff's conditions, including his mental impairments, when making the RFC determination. Tr. 57-60. Further, by limiting him to "unskilled work with brief and superficial contact with the public," the ALJ accomodated for

Page 15 - OPINION AND ORDER

plaintiff's psychological impairments in the RFC. Tr. 57. Plaintiff's argument regarding the ALJ's failure to perform a "mental RFC assessment" is without merit. See Valvo v. Astrue, 2013 WL 1326588, *11 (D. Or. Mar. 30, 2013).

B. Moderate Impairments

Using the technique outlined in 20 C.F.R. § 416.920a, the ALJ found, at step two, that plaintiff had moderate limitations with regard to concentration, persistence or pace and in maintaining social functioning. Tr. 55. The mild, moderate, or severe limitations, in the broad categories of activities of daily living, maintaining social functioning, and concentration, persistence or pace, that are assessed as part of the special technique "are not an RFC assessment but are used to rate the severity of mental impairment(s) at steps 2 and 3 of the sequential evaluation process"; rather, the "RFC assessment used at steps 4 and 5 of the sequential evaluation process requires a more detailed assessment by itemizing various functions." SSR 96-8p, available at 1996 WL 374184; see also Rogers v. Comm'r of Soc. Sec. Admin., 490 Fed.Appx. 15, 17-18 (9th Cir. 2012) (moderate impairments assessed on a psychiatric review technique form "in broad functional areas used at steps two and three" did not equate to concrete work-related limitations for RFC); Tr. 57 (ALJ specifically noting that limitations found during his step two analysis were "not a [RFC] assessment").

Accordingly, "the term 'moderate' does not necessarily indicate a degree of limitation that must be expressly reflected in the RFC assessment [because it] does not inherently translate to a concrete functional limitation." Brink v. Astrue, 2013 WL 1785803, *5 (D. Or. Apr. 24, 2013) (collecting cases). "[T]he dispositive inquiry is whether the ALJ's RFC assessment is supported by substantial evidence" and "consistent with the restrictions identified in the medical testimony." Id. (citing Stubbs-Danielson, 539 F.3d, 1169, 1173-74 (9th Cir. 2008)); see also Rogers, 490 Fed.Appx. at 17-18.

i. Concentration, Persistence or Pace

The medical opinion evidence in this case is very limited. It consists of reports from Dr. Shields and Dr. Greene, along with analyses performed by various state agency consultants. Dr. Shields' assessment did not "reveal any severe impairments in attention, concentration or memory functioning." Tr. 58, 264. As such, Dr. Shields opined that plaintiff "was capable of understanding, remembering, and carrying out simple to moderately difficult, 1-3 step instructions." Id. Likewise, Joshua Boyd, Psy.D., a state agency consultant, found that, despite plaintiff's moderate impairment in concentration, persistence or pace, he was nonetheless capable of performing "simple 1-3 step job tasks." Tr. 283, 289; see also Tr. 299 (state agency consultant Kordell Kennemer, Psy.D., affirming Dr. Boyd's opinion).

Page 17 - OPINION AND ORDER

The only other opinion evidence in the record is from Dr. Greene; however, as stated above, the ALJ properly assigned no weight to her opinion.[4] Accordingly, the ALJ properly translated plaintiff's moderate impairment in concentration, persistence or pace by limiting him to "unskilled work." See Sabin v. Astrue, 337 Fed.Appx. 617, 620-21 (9th Cir. 2009); Brink, 2013 WL 1785803 at *6-7. The ALJ therefore did not err in formulating the RFC in regard to plaintiff's moderate limitation in this category.

ii. Maintaining Social Functioning

Dr. Shields reported that plaintiff entered his office in a "happy, pleasant mood; joking and making efforts to facilitate the rapport between us." Tr. 262. Dr. Shields opined that plaintiff did not exhibit any adverse social behavior during his evaluation, such that he did not ascribe any limitations in maintaining social functioning. Tr. 264. Dr. Boyd, who assessed plaintiff with a moderate impairment in this category, reported that plaintiff "should avoid working directly with the public, although he is a jovial kind of guy." Tr. 289; see also Tr. 253. While Dr. Greene

---

[4] Plaintiff points to a low score on a processing speed index, administered by Dr. Greene, as evidence that the ALJ did not consider all of his limitations. Pl.'s Opening Br. 15-16. This index was merely a subset of his full-scale IQ, which, at 83, was in the low average range. See Tr. 305 (Dr. Greene reporting that plaintiff's overall IQ score "was brought down by an extremely low processing speed index"). In other words, despite his limitations in processing speed, plaintiff is of average intelligence, which is not itself indicative of disability. See 20 C.F.R. pt. 404, subpt. P, app. 1, § 12.05C.

indicated plaintiff was more limited in social functioning, as discussed above, the ALJ properly rejected that report. Thus, the ALJ did not err in finding that plaintiff was capable of "brief and superficial contact with the public." Tr. 57. The ALJ's RFC is affirmed.

V. Listing 12.06

Plaintiff contends that the ALJ erred at step three in determining that his impairments did not meet or equal listing 12.06. To establish a listed impairment at step three, the claimant must demonstrate that "all of the specified criteria [are met]." Sullivan v. Zebley, 493 U.S. 521, 530 (1990). "An impairment that manifests only some of those criteria, no matter how severely, does not qualify." Id. The requirements of listing 12.06 are:

> A: Medically documented findings of at least one of the following: (1) Generalized persistent anxiety accompanied by three out of the four of the following signs or symptoms (a) Motor tension; or (b) Autonomic hyperactivity; or (c) Apprehensive expectation; or (d) Vigilance and scanning; or (2) A persistent irrational fear of a specific object, activity, or situation which results in a compelling desire to avoid the dreaded object, activity or situation; or (3) Recurrent severe panic attacks manifested by a sudden unpredictable onset of intense apprehension, fear, terror and sense of impending doom occurring on the average of at least once a week; or (4) Recurring obsessions or compulsions which are a source of marked distress; or (5) Recurrent and intrusive recollections of a traumatic experience, which are a source of market distress; and
>
> B. Resulting in at least two of the following: (1) Marked restrictions in activities of daily living; or (2) Marked difficulties in maintaining social functioning; or (3) Marked difficulties in maintaining concentration, persistence or pace; or (4) Repeated episodes of

decompensation, each of extended duration; or

C. Resulting in a complete inability to function independently outside of one's home.

20 C.F.R. pt. 404, subpt. P, app. 1, § 12.06; see also Evenhus v. Astrue, 815 F.Supp.2d 1154, 1159 (D. Or. 2011).

As noted above, the ALJ found at step two that plaintiff was mildly restricted in activities of daily living, moderately restricted in maintaining social functioning, and moderately restricted in concentration, persistence or pace, with no episodes of decompensation. Tr. 55. As a result, the ALJ found at step three that plaintiff did not meet or equal the criteria of listing 12.06. Tr. 54.

In challenging the ALJ's step three finding, plaintiff places great weight on Dr. Greene's June 2011 report. Because the ALJ properly discredited Dr. Greene's opinion and there is no other evidence of any marked impairment in activities of daily living, maintaining social functioning, or concentration, persistence or pace, plaintiff cannot establish the requirements of listing 12.06's B or C criteria. As such, the ALJ properly found that plaintiff did not meet or equal listing 12.06 at step three.

VI. The ALJ's Step Five Finding

Plaintiff reasserts his previous allegations of error to argue that the ALJ failed to account for all of his limitations in the RFC, such that the ALJ's step five finding was not supported by substantial evidence. As discussed above, the ALJ's RFC included

Page 20 - OPINION AND ORDER

restrictions for all of plaintiff's well-supported limitations. Likewise, the dispositive hypothetical question posed to the VE was accurate and complete. <u>Compare</u> Tr. 57, <u>with</u> Tr. 44-45; <u>see also</u> <u>Bayliss</u>, 427 F.3d at 1217-18. Accordingly, the ALJ's step five finding is upheld.

### CONCLUSION

The Commissioner's decision is AFFIRMED and this case is DISMISSED.

IT IS SO ORDERED

Dated this 24th day of June 2014.


_____
Ann Aiken
United States District Judge

Page 21 - OPINION AND ORDER